TOWNES v. KRUMPEN.

Opinion delivered December 7, 1931.

912

*J. A. Tellier,* for appellant.

*Raymond Jones, Louis Cohn, Tom F. Digby, Graham R. Hall, Barber & Henry, Geo. C. Lewis* and *Buzbee, Pugh & Harrison,* for appellees.

KIRBY, J., (after stating the facts). Our statute, under the provisions of which appellees recovered judgments, reads as follows:

"It shall be lawful for any married woman, by herself and in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured, for her sole use, the life of her husband, for any definite period, or for the term of his natural life; and, in case of her surviving her husband, the sum or net amount of the insurance becoming due and payable by the terms of the insurance shall be payable to her and for her use; and, in case of the death of the wife before the decease of her husband, the amount of said insurance may be made pay-

able to his or her children, for their use, and to their guardian, for them, if they shall be under age, as shall be provided in the policy of insurance; and such sum or amount of insurance so payable shall be free from the claims of the representatives of the husband, or of any of his creditors; but such exemption shall not apply where the amount of premium annually paid out of the funds or property of the husband shall exceed the sum of three hundred dollars." Crawford & Moses' Dig., § 5579.

The statute has not been construed by this court, except having been referred to once in the case of *Davis v. Cramer,* 133 Ark. 224, 202 S. W. 239, where the court held that the policy of insurance had been transferred during the lifetime of the insured to defraud his creditors.

It is contended by appellant that said statute, § 1 of the act of April 29, 1873, (§ 5579, Crawford & Moses' Digest), has been repealed by § 7, article 9, of the Constitution of Arkansas of 1874, and by acts 159, approved March 19, 1915, and 66, amending said act, approved February 11, 1919. This provision of the Constitution and these statutes have removed all common-law disabilities of married women to contract, acquire and hold property, leaving their status in such regard that of an unmarried woman or *feme sole.*

Our said statute was obviously borrowed from the laws of New York, being in the identical language of its statute of 1840, which had not been construed, so far as we can ascertain, by any of its courts before its enactment here in 1873, and any later construction of the statute by the courts of that State is not presumed to have been adopted in its enactment here, and is in no wise controlling upon our courts. *Wallis* v. *State,* 54 Ark. 611, 16 S. W. 821; *Nebraska National Bank* v. *Walsh,* 68 Ark. 433, 59 S. W. 952, 82 Am. St. Rep. 301; *Brickhouse* v. *Hill,* 167 Ark. 513, 268 S. W. 865; 25 R. C. L., Statutes, § 294.

Most of the New York cases cited were in construction of its amended statutes. The only case construing the act of 1840, as existed at that time and identical with

our statute, is *Whitehead* v. *New York Life Ins. Co.*, 102 N. Y. 143, 6 N. E. 267, 55 Am. Rep. 287, decided in 1886. The question raised here was not in that case, nor attempted to be determined therein. It was held there that the wife had a vested interest in the policies at the moment of their delivery to the insured, and also that the husband was the agent of the wife in making the contract of insurance and paying the premiums thereon. All amendments to the said New York statute of 1840 and the statute itself were repealed in 1896 by laws relating to insurance on the life of a husband taken for the benefit of his wife, in which it was provided that such insurance should be "free from any claim of a creditor or representative of her husband, except where the premiums actually paid annually out of the husband's property exceeded $500, that portion of the insurance money which is purchased by excess premiums above $500 is primarily liable for the husband's debts, * * *," (Laws N. Y. 1896C 272, § 22); and the courts of that State have held that such portion of the insurance money as was purchased by annual premiums in excess of $500 was impressed with a lien for the debts of the deceased in favor of all his creditors ratably. *Kittel* v. *Domeyer,* 175 N. Y. 205, 67 N. E. 433. Certainly the construction placed by the New York court in 1903 on a law passed in that State in 1896 granting an express lien to the creditors on the insurance purchased by the expenditure of money for premiums for insurance on the husband's life in excess of $500 yearly can have no weight in a construction of our statute. The cases hold in the construction of statutes of this kind that the contract of insurance is a contract with the wife, although procured by the husband for her benefit, and he is held to have been acting as her agent representing her, acquiring no interest in or power of disposition over the policy, his relation being that of life insured while hers was that of the legal holder in whom solely was the vested interest. *Felrath* v. *Schonfield,* 76 Ala. 199, 52 Am. Rep. 319; *Stilwell* v. *Mutual Life Ins. Co.,* 72 N. Y. 386; *Gremes* v. *Travers,* 87 Misc. Rep. 644,

148 N. Y. S. 200; *Huston* v. *Maddux,* 179 Ill. 377, 53 N. E. 599; *Davis* v. *Cramer, supra.*

No allegation of fraud is made that the insurance was purchased for the benefit of the wife by the payment of more than $300 yearly for premiums, to cheat, hinder and delay creditors. Under our laws, the husband can make valid gifts of his property to his wife or any one else, provided he is not insolvent at the time, and has left enough property to pay his debts. It is also true that, in order for a subsequent creditor to impeach an otherwise valid conveyance by a debtor prior to the creation of his debt, he must show an actual intention to defraud. *Buchanan* v. *Williams,* 110 Ark. 335, 160 S. W. 190. There is no evidence in this case conducing to show any such actual intention at the time these policies of insurance were procured, and, so far as his creditors, prior or subsequent, are concerned, the testimony shows that the insured was carrying insurance policies in the sum of $15,000, payable to his estate, and continued to carry such insurance until his death, although he had borrowed a substantial amount upon the policies, leaving, however, something like $10,000 thereof to his estate. There was no actual intent to defraud subsequent creditors shown, nor any circumstances from which such intention would necessarily arise at the time of taking the policies of insurance in controversy, nor is there any testimony conducing to show that at that time the insurance payable to his estate would not have satisfied all prior debts, and no inference necessarily arises from the testimony in the case that, according to appellant's manner of living and earnings or accumulation of property, there would not have been sufficient money realized from the insurance payable to his estate to satisfy the claims of his creditors.

The wife had a vested right in these policies of insurance upon their issuance and delivery, and to the proceeds thereof upon the death of the insured. No steps were taken by the creditors to subject the proceeds of these insurance policies to payment of their debts, even if they had had the right to do so, before the death of the

insured, when the proceeds of the policies became her separate property, not subject to the payment of the debts of her husband.

It follows that the court erred in its finding and judgment holding otherwise, and the cause will be remanded with directions to enter a decree in accordance with this opinion, giving to the appellant the proceeds of said insurance free from all the claims of appellees herein, and denying them any rights therein. It is so ordered.

SMITH, J., dissents.