### In re MILLER.

### HARRISON v. MILLER.

### No. 10072.

Circuit Court of Appeals, Eighth Circuit.

Nov. 19, 1934.

Clinton R. Barry, of Fort Smith, Ark., for appellant.

D. H. Howell, of Van Buren, Ark., for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order adjudging that the cash surrender value of two policies of life insurance was not an asset of the bankrupt estate of Othniel Miller, bankrupt, and ordering that said policies be delivered by the trustee in bankruptcy to Emma P. Miller, wife of the bankrupt.

The first policy was issued June 3, 1901, and by its terms was fully paid up in 1921, being a twenty-payment life policy. The second policy was issued May 19, 1915, and is an ordinary life contract, the premiums on which have been kept paid, and the policy is in full force and effect. The cash surrender value of these policies is about $2,000. Miller was adjudged a bankrupt on petition filed by his creditors, and, in preparing a schedule of property owned and in his pos-

session at the time of adjudication, he listed the two policies in question, but claimed them exempt under the statutory laws of Arkansas, and especially under section 5579, Crawford & Moses' Dig. Ark. Both he and appellee, his wife, filed a petition with the referee, in which it was claimed that the cash value of these policies was appellee's separate property, and asked that the policies be delivered to her. The referee denied the petition, but on review the lower court reversed the holding of the referee, decreed that the cash surrender value of the policies was not an asset of the bankrupt's estate, and ordered the policies delivered to the appellee.

The bankrupt testified that, not taking into consideration the two insurance policies, he was during the latter part of 1931 solvent and financially able to meet his debts, that, during the time he contracted the indebtedness set forth in his schedules, the total amount of money paid by him for life insurance premiums per annum was $149.27, and that he at no time paid as much as $300 per annum in life insurance premiums.

In each of the life insurance policies, the assured reserved the right to change the beneficiary, and each policy provided that, if he so elected, he might surrender the policy and receive from the company the cash surrender value provided for in the policy.

It is the contention of appellant that the cash surrender value of these policies is a part of the estate in bankruptcy, and in support of this contention he cites section 70a of the Bankruptcy Act (11 USCA § 110 (a). The cited statute vests in the trustee of the estate of a bankrupt the title of the bankrupt to his property as of the date he was adjudged a bankrupt "except in so far as it is to property which is exempt, etc."

Appellee bases her claim to these policies upon section 5579, Crawford & Moses' Dig. Ark., which reads as follows:

"It shall be lawful for any married woman, by herself and in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured, for her sole use, the life of her husband, for any definite period, or for the term of his natural life; and, in case of her surviving her husband, the sum or net amount of the insurance becoming due and payable by the terms of the insurance shall be payable to her and for her use; and, in case of the death of the wife before the decease of her husband, the amount of said insurance may be made payable to his or her children, for their use, and to their guardian, for them, if they shall be under age, as shall be provided in the policy of insurance; and such sum or amount of insurance so payable shall be free from the claims of the representatives of the husband, or of any of his creditors; but such exemption shall not apply where the amount of premium annually paid out of the funds or property of the husband shall exceed the sum of three hundred dollars."

Manifestly, the question for determination is whether or not appellee is entitled to these policies under the above-quoted statute of Arkansas. The matter of exemption is to be determined by the state laws, and, in determining what construction is to be placed upon a state statute, this court will be guided by the construction placed thereon by the Supreme Court of the state. Holden v. Stratton, 198 U. S. 202, 25 S. Ct. 656, 49 L. Ed. 1018; Ralph v. Cox (C. C. A. 8) 1 F.(2d) 435; Rowekamp et al. v. Mercantile-Commerce Bank & Trust Co. et al. (C. C. A. 8) 72 F.(2d) 852. We turn, therefore, to the decisions of the state of Arkansas which interpret or construe this statute. The statute has been considered by that court in the following cases: Davis, State Bank Commissioner, v. Cramer et al., 133 Ark. 224, 202 S. W. 239, 241; Townes v. Krumpen, 184 Ark. 910, 43 S.W.(2d) 1083, 1085; Lazarus v. Alphin, 185 Ark. 267, 46 S.W.(2d) 1104.

In Davis, State Bank Commissioner, v. Cramer, supra, it is among other things said:

"It is the obvious purpose of this statute to exempt from the claims of the creditors out of the estate of the husband and father a sum not exceeding $300 to pay insurance premiums on policies issued on his life for the benefit of his wife and children."

In Townes v. Krumpen, supra, insurance was taken out by the husband and the premium paid by him, and the court held that the proceeds thereof, so far as $300 annual premium would buy, were exempt to the wife as against her husband's creditors under section 5579. In the course of the opinion in that case it is, among other things, said:

"No allegation of fraud is made that the insurance was purchased for the benefit of the wife by the payment of more than $300 yearly for premiums, to cheat, hinder, and delay creditors. Under our laws, the husband can make valid gifts of his property to his wife or any one else, provided he is not insolvent at the time, and has left enough

property to pay his debts. It is also true that, in order for a subsequent creditor to impeach a valid conveyance by a debtor prior to the creation of his debt, he must show an actual intention to defraud. * * *

"The wife had a *vested right in these policies of insurance upon their issuance and delivery, and to the proceeds thereof upon the death of the insured.*" (Italics supplied.)

In Lazarus v. Alphin, supra, the court, in referring to Townes v. Krumpen, said:

"In the recent case of Townes v. Krumpen [184 Ark. 910], 43 S.W.(2d) 1083, this court construed said section to mean that in any event a husband might expend as much as $300 annually out of his funds as premiums on life insurance protection for his wife, and that he might expend more than said amount for insurance if purchased in good faith and without an intent to cheat, hinder, and delay his creditors."

In Ralph v. Cox, 1 F.(2d) 435, we considered an order which directed the bankrupt to surrender a life insurance policy to the trustee subject to the bankrupt's right to reclaim the same by payment of its cash surrender value. The policy was issued to the wife of the bankrupt who was named as beneficiary, but, as in the instant case, right was reserved to the insured to change the beneficiary, which right, however, he had not exercised. The case arose in Minnesota, and, following the rule announced by the Supreme Court of that state in Murphy v. Casey, 150 Minn. 107, 184 N. W. 783, we held that the bankrupt estate was not entitled to a surrender of the policy, and, among other things, we there said:

"It was held [in Murphy v. Casey] that so long as there was no change of beneficiary, by death or otherwise, the policy was exempt under the statute from the claims of creditors and that the interest of the insured was not available to them, that it could not be said that credit had been extended to the insured on the faith of the insurance, for all persons dealing with him were bound to know that money becoming due thereon, when payable to a third person, is exempt from their claims in the absence of fraud on the part of insured."

The Circuit Court of Appeals of the Second Circuit, in Re Reiter, 58 F.(2d) 631, 633, in considering the right of the trustee in bankruptcy to a delivery of insurance policies having a cash surrender value, in some of which the wife was named as beneficiary, among other things said:

"The weight of authority is in accord. The Eighth Circuit (In re Orear [C. C. A.] 189 F. 888) so construed a Missouri statute (section 5981, Mo. Rev. St. 1879), which said nothing about change of beneficiary, holding that it applied in spite of the reservation of such a power; and in Jens v. Davis (C. C. A.) 280 F. 706, it reached the same result under a similar Iowa statute (section 1805, Iowa Code 1897). However, in Aberle v. McQuaid (C. C. A.) 283 F. 779, it took the opposite view of a Minnesota statute (Gen. St. 1913, §§ 3465, 3466); though this curiously enough expressly mentioned reserved powers to revoke, and was for that reason stronger for the beneficiary than either of the earlier. However, in Ralph v. Cox (C. C. A.) 1 F.(2d) 435, Aberle v. McQuaid, was overruled, because meanwhile the state court had taken a different view. Murphy v. Casey, 150 Minn. 107, 184 N. W. 783. The Third Circuit (Smith v. Metropolitan Life Ins. Co. [C. C. A.] 43 F.(2d) 74), following New Jersey decisions (Farmer, etc., Co. v. Albright, 90 N. J. Eq. 132, 106 A. 545; Merchants', etc., Co. v. Borland, 53 N. J. Eq. 282, 31 A. 272), which had so construed a New Jersey statute (sections 38, 39 of the New Jersey Insurance Law [2 Comp. St. 1910, p. 2850, §§ 38, 39]), held the policy exempt, though the statute was silent as to powers to revoke."

In a technical sense, the Arkansas statute under consideration may not be an exemption statute, but, in a popular sense, at least as construed by the Supreme Court of Arkansas, it may be so construed. The wife acquired a vested right in these insurance policies "upon their issuance and delivery." This character of investment for the protection of the wife is guaranteed by the Arkansas statute against the claims of creditors so long as the annual expenditure does not exceed $300, and, if made in good faith without intent to cheat, hinder, or delay creditors, the husband may expend in excess of that amount. When so expended or invested, even though the husband may have a right to change the beneficiary, yet, subject to that right, the wife acquires a vested interest in the policy. It appears in this case that these policies were taken out by the bankrupt when he was solvent; that during the time he contracted the indebtedness scheduled he paid for life insurance premiums only the sum of $149.27 per annum, although, as we have noted, he was entitled to expend as much as $300 per annum out of his funds for such life insurance in favor of his wife. There is no suggestion of fraud nor of any intent on

the part of the insured to cheat, hinder, or delay his creditors.

We are of the view that these policies were not subject to the claim of creditors, and the court correctly held that the policies belonged to the appellee.

The judgment appealed from is therefore affirmed.